UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| KRISTI BUCY,<br><br>    Petitioner,<br><br>vs.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>    Respondent. | Case No. CV 14-00220-S-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Now pending before the Court is Petitioner Kristi Bucy's Petition for Review (Dkt. 1), filed June 3, 2014, seeking review of the Social Security Administration's final decision to deny her disability benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

### I.  ADMINISTRATIVE PROCEEDINGS

On September 5, 2012, Kristi Bucy ("Petitioner") applied for Social Security Disability Insurance, alleging a disability onset date of June 28, 2012, when she was 37 years old.  She also protectively applied for Social Security Supplemental Income on August 28, 2012.  (AR 191-198.)  Petitioner's claim was initially denied and, again, denied on reconsideration. (AR 113-130, 133-152.)  Petitioner filed a Request for Hearing before an Administrative Law Judge ("ALJ").  On December 5, 2013, ALJ John T. Molleur held a hearing at which time Petitioner, represented by attorney Jessica Bublitz, appeared and testified.  (AR 32-56.)  Vocational expert

**MEMORANDUM DECISION AND ORDER - 1**

Cassie Mills also appeared and testified.  (*Id*.)  At the time of the hearing, Petitioner had past relevant work as a caregiver, waitress/bar, cashier/checker, and secretary.  (AR 24.)

On February 14, 2014, the ALJ issued a decision, denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act.  (AR 10-25.)  Petitioner timely requested review from the Appeals Council on February 25, 2014. (AR 5-6.)  The Appeals Council then denied review on April 1, 2014 (AR 1-4) rendering the ALJ's decision the Commissioner's final decision.  Plaintiff now seeks judicial review of the Commissioner's decision to deny benefits.  Petitioner contends the ALJ erred by: (1) disregarding Petitioner's ophthalmologic migraines and failing to address the effects on her ability to perform work-related activity; (2) failing to order a consultative exam; and (3) failing to give proper weight to the opinion of Dr. River.

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human*

**MEMORANDUM DECISION AND ORDER - 2**

*Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.  The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.  *See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

**MEMORANDUM DECISION AND ORDER - 3**

## III. DISCUSSION

### A.   Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner had not engaged in SGA after June 28, 2012, the alleged onset date. (AR 12.)

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).

**MEMORANDUM DECISION AND ORDER - 4**

An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner had the following severe impairments: ocular migraines, degenerative disc disease cervical spine, substance abuse, schwannoma, and depression.  (AR 12.)

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  *Id.*  Here, the ALJ concluded that Petitioner does not have an impairment (or combination of impairments) that meets or medically equals a listed impairment (AR 14.)

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that

**MEMORANDUM DECISION AND ORDER - 5**

disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ determined that Petitioner has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b) except as follows: unable to climb ladders, ropes and scaffolds, can climb ramps and stairs only occasionally, and can perform all other postural activities only frequently.  She should have no exposure to dust, fumes, gases, poor ventilation, noxious odors or other lung irritants.  She should have no work at unprotected heights and no work at close proximity to mobile machinery.  Work is also restricted to uninvolved 3 and 4 step tasks.  She is further limited to only frequent use of fine binocular vision, and while she can also tolerate typical ambient room lighting, there should be no work that requires her to be exposed directly to excessive lighting over and above normal ambient room lighting.  (AR 17.)   The ALJ also determined that Petitioner was not capable of performing past relevant work.  (AR 24.)

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled.  The ALJ found, at step five, that Petitioner is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  (AR 24.)

**MEMORANDUM DECISION AND ORDER - 6**

B.     Analysis

      1.     **Petitioner's Ocular Migraines and Effects on Ability to Work; Petitioner Credibility**

Petitioner contends that the ALJ did not include all of the limitations caused by her ocular migraines. Petitioner argues that the ALJ disregarded limitations such as the pain from the headaches and double vision and focused only on limited light exposure and use of glasses.

A claimant's residual functional capacity is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a). An ALJ considers all relevant evidence in the record when making this determination. *Id*. It is proper for an ALJ to limit the analysis to "those impairments that are supported by substantial evidence in the record." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir.2001). Unsupported limitations may be excluded. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir.2005). In his overall assessment, the ALJ need not consider those limitations which depend on the petitioner's subjective complaints *if* petitioner's complaints are not credible. *Id.* at 1217.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). However, the ALJ's findings must be supported by specific, cogent reasons and where a claimant's testimony is rejected, the ALJ must support that decision by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, as well as claimant's daily activities, claimant's work record, and testimony from physicians and third parties

**MEMORANDUM DECISION AND ORDER - 7**

concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  Also, the ALJ may consider: location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount of and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms.  *See* Soc. Sec. Ruling (SSR) 96-7p.

In pertinent part for this case, the ALJ found Petitioner's testimony not entirely credible with regard to limitations alleged to stem from "markedly incapacitating pain due to the tumor behind her left eye."  (AR 19.)  First, the ALJ noted that Petitioner successfully engaged in work activity as a caregiver with the same, or similar, allegedly disabling impairments years before the alleged onset date.  (*Id*.)  The ALJ noted that although Petitioner stated that her conditions had worsened since the onset date, "[her statement] is simply not supported by the medical records given doctor statements after reviewing clinical studies that the schwannoma is stable, unchanged going back to December 31, 2008, which was bolstered by subsequent examining neurology specialists who did not believe her left-sided ocular pain had really anything to do with the schwannoma."  (*Id*.)  The ALJ pointed to the lack of "objective clinical findings substantiating these disabling impairments. . ."  (*Id*.)  The ALJ emphasized that although Petitioner claims her left eye is worsening, an examining doctor in November 2012 found stable ophthalmologic findings and only mildly decreased visual acuity on the left side.  (*Id*. at 20.)  An examining neurosurgeon agreed with Petitioner's treating physician, Dr. River, that the left-sided ocular pain was not related to the schwannoma and the neurosurgeon (Dr. Anderson) found that the schwannoma is "unchanged in size, shape or appearance" since 2008.  (*Id*.)  Additionally, Petitioner reported she is busy, takes her daughter to cheerleading practice, and goes on walks

**MEMORANDUM DECISION AND ORDER - 8**

which is not consistent with her allegations of vision loss and being bedridden due to pain. (*Id.*)

Additionally, the ALJ concluded that the Petitioner's description of inactivity in daily living was difficult to attribute to her impairments, given that no physician had suggested any need for excessive rest or inactivity. (*Id.*) The ALJ found inconsistencies between statements she had made to physicians and statements made at the hearing. For example, Petitioner reported to Dr. Bailey on December 11, 2012, that only Norco would help her headaches. The ALJ said this undercuts her insistence that nothing helps her pain. (*Id.*) She also did not tell Dr. Bailey that she spends most days in bed due to pain, but she testified to that at the hearing. (*Id.*) Additionally, the ALJ discussed that University of Utah specialists have noted that narcotics are causing analgesic overuse headaches and are not recommended for ocular headaches. (*Id.*) The ALJ also found inconsistencies between different statements made by the Petitioner herself, such as her statement that she stopped working on June 28, 2012 due to thoracic strain but made a later statement that depression kept her from working. (*Id.*)

The ALJ made a proper credibility assessment. He noted inconsistencies between Petitioner's testimony and her activities of daily living, inconsistencies between statements to various physicians, inconsistencies between her testimony at the hearing and her statements to physicians, as well her past work record. The ALJ also found that the objective medical evidence did not support Petitioner's allegations of debilitating pain due to her headaches or that the condition has worsened. These are all valid considerations in making an adverse credibility determination and substantial evidence supports the ALJ's determination.[1]

---

[1] The ALJ's discussion also comports with the Ninth Circuit's requirement that the ALJ must identify which testimony he found not credible and why. *See Brown-Hunter v. Colvin*, No. 13-15213, 2015 WL 4620123, at *1 (9th Cir. Aug. 4, 2015).

**MEMORANDUM DECISION AND ORDER - 9**

Additionally, the Petitioner is not precisely correct in what limitations were assessed by the ALJ related to her vision and migraines. Petitioner states that the ALJ only included the use of glasses and limited light exposure. She is mistaken. As discussed above, the ALJ included limitations of only frequent use of binocular vision, no exposure to excessive lighting, and limited tasks to only three and four steps. (AR 17.)

Lastly, Petitioner appears to take issue with the ALJ's decision because of his treatment of the etiology of Petitioner's ocular migraines.[2] Petitioner argues: "The pain from the headaches themselves, double vision, and the resulting limitations, were all completely disregarded by the ALJ, presumably because examining physicians felt they had an ocular migraine etiology as opposed to resulting from her tumor [schwannoma]." Pet.'s Brief, p. 3 (Dkt 13). Petitioner is correct that the ALJ does discuss the source of Petitioner's headaches and eye pain. (*See* AR 14 ("a neuro-ophthalmology specialist thought the [migraine headaches with left eye pain] are purely ophthalmologic migraines rather than nerve tumor and are rarely associated with schwannoma"); AR 19-20 ("neither the University of Utah specialists nor her doctors seem to believe this [the schwannoma] is the source of headaches"); AR 20 (at least three specialists concur that she has ocular migraines, and that the schwannoma is stable, unchanged and not the source of her headaches")). However, nowhere does the ALJ discount Petitioner's pain testimony or vision problems *because of* the etiology of her migraines. Instead, he discounts her limitations for reasons discussed above: inconsistent statements, work record, daily activities,

---

[2] Petitioner also contends that because the ALJ finds the evidence does not support that the optic nerve tumor (schwannoma) is the source of the headaches, "he seems to therefore believe the migraine diagnosis to be irrelevant." Pet's Brief, p. 3. Again, this is incorrect. The ALJ included both ocular migraines *and* schwannoma in his finding of severe impairments. (AR 12.)

**MEMORANDUM DECISION AND ORDER - 10**

and lack of objective medical evidence.

Unsupported limitations may be excluded by the ALJ if there is substantial evidence to support such exclusion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). The ALJ need not consider those limitations which depend on the petitioner's subjective complaints *if* petitioner's complaints have not been deemed credible. *Id.* at 1217. The Court concludes there is substantial evidence to support the ALJ's residual functional capacity determination and the limitations assessed therein.

**2.     Dr. River's Opinion**

Petitioner contends that the ALJ improperly discounted the opinion of Dr. River by erroneously disregarding every single part of her opinion. From the Court's review of the record, it appears Dr. River saw Petitioner twice – in February 2012 and on May 7, 2013. (*See* AR 636.)[3] She completed the Medical Source Statement on January 3, 2014. (AR 810-814.)

Ninth Circuit case law distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). If the

---

[3] The record of the February 2012 visit is not in the administrative record based on the Court's review.

**MEMORANDUM DECISION AND ORDER - 11**

treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

A treating source is a claimant's own physician who provides, or has provided, medical treatment or evaluation and has, or has had, an ongoing treatment relationship with the claimant. 20 C.F.R. § 404.1502. An ongoing treatment relationship is shown by medical evidence establishing that the claimant sees, or has seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for claimant's medical condition(s). *Id*.

The ALJ must consider factors set out in 20 C.F.R. § 404.1527(c)(2)-(6) in weighing the treating physician's medical opinion. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). These factors include the length of the treatment relationship and the frequency of examination by the treating physician, the nature and extent of the treatment relationship between the patient and treating physician, the support of medical evidence for the opinion, and the consistency of the physician's opinion with the record as a whole. 20 C.F.R. § 404.1527(c)(2)-(6).

An ALJ is not required to accept a conclusory opinion of a treating physician not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.

**MEMORANDUM DECISION AND ORDER - 12**

1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may undermine the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d at 1216; *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

Both parties acknowledge the uncertainty of Dr. River's status – *i.e.*, was she a treating physician? *See* Pet.'s Brief, p. 6 ("Even if the ALJ's finding that the Doctor had not seen her enough to be regarded as a treating physician . . ."); Resp.'s Brief, p. 13 ("It is unclear whether Dr. River was a treating physician."). For purposes of this analysis, the Court will consider her to be a treating physician.

Dr. River completed a Physical Medical Source Statement on January 3, 2014. (AR 810-814.) In his decision, the ALJ stated he gave Dr. River's opinion "little weight" because she saw the claimant only twice, 15 months apart, and had not seen the claimant in eight months at the time she completed the report. (AR 21.) The ALJ also stated that Dr. River's medical source statement was "based on [the claimant's] self-report." (*Id.*)

A contradicted[4] treating physician's opinion can be rejected for "clear and legitimate reasons." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). In assigning little weight to Dr. River's opinion, the ALJ cited two of the factors set forth in 20 C.F.R. § 404.1527(c): first, the length of the treatment relationship and, second, the frequency of the treatment relationship. These are legitimate and proper factors in giving weight (or discounting the weight to be given)

---

[4] Dr. River's opinion is contradicted by the state agency physicians.

**MEMORANDUM DECISION AND ORDER - 13**

to a treating physician's opinion.

Moreover, and importantly in this case, Dr. River's medical source statement relied upon Petitioner's self-reports. The ALJ found, for proper reasons, that Petitioner was not entirely credible. An ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

The ALJ has given reasons specific to Dr. River in rejecting her opinion, including (1) the length of the treatment relationship, (2) frequency of examination, and (3) the fact that her opinion was based in large part on Petitioner's self reports which the ALJ has found not credible. These are legitimate reasons under the applicable Social Security regulations and law. Accordingly, there was no error in the consideration of Dr. River's opinion.

### 3.    Consultative Exam

Petitioner contends that the ALJ erred by failing to order a consultative exam. There was a request made by Petitioner's attorney prior to the hearing, asking for a "mental impairment and cognitive CE." (AR 298.) The ALJ denied the request. (AR 299.)

At the hearing, Petitioner's attorney said that some records from St. Alphonsus Medical Center, including from Petitioner's neurologist, had been requested but had not come in. She requested that the record be left open for 30 days to allow for those records to be submitted to the ALJ. The ALJ agreed to do so, and said that "given the nature of the impairments in this case, I think neurology records especially would be germane." (AR 36.)

Also at the hearing, Petitioner's attorney noted that she had requested a CE for "some kind of neurological testing." This testimony followed:

**MEMORANDUM DECISION AND ORDER - 14**

ALJ:        I think the neurological clinical notes will - -

ATTY:       Will be the best.

ALJ:        - - be especially helpful and I thought you had requested a psychological one and, outside of the two inpatient hospitalizations she had at Intermountain, I didn't see a whole lot in the way of mental health treatment so I wanted to get at what was going on there.

ATTY:       Uh-huh.

ALJ:        You noticed whenever - -

ATTY:       Yeah.

ALJ:        - - by deny, I said deny pre-hearing.

ATTY:       Right.

ALJ:        I said it specifically.

ATTY:       Right, right. And - -

ALJ:        And I have granted them post-hearing on occasion where, you know, after hearing the evidence, I felt that one was warranted so that's kind of the stance I was taking here.

ATTY:       And I don't see that we ever tried to get one, an opinioned evidence from Mary Rivers and, since she's still seeing her and has seen her recently, we're going to try to get an opinion from her as well.

ALJ:        Okay.  That's something that would - - you're more than welcome to pursue that.

(AR 39-40.)

Following the hearing, the record was left open for 30 days.  Petitioner submitted an additional five exhibits, which consisted of medical records from St. Alphonsus Neurosurgery (Dr. Anderson), Idaho Neurology (Dr. River), St. Alphonsus Regional Medical Center (Dr. Weathers) regarding mental health, a St. Alphonsus Emergency Room visit in September 2013,

**MEMORANDUM DECISION AND ORDER - 15**

and a medical source statement completed by Dr. River in January 2014.  (AR 727-813.)

The ALJ's obligation to fully develop the record in a social security disability case requires that he or she seek additional evidence or clarification when the record is inadequate to allow for proper evaluation of the evidence.  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  An ALJ should order a consultative exam when the record is incomplete, the evidence is ambiguous, or where it is necessary to "fully and fairly develop" and to "'assure that the claimant's interests are considered.'"  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).  Consistent with that discretion, the ALJ also has the discretion to reject a claimant's request for a consultative exam.  20 C.F.R. §§ 404.1519a(a)(1), 404.1519m.

The duty to develop the record may be discharged in several ways including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record.  *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998).  Here, the ALJ left the record open for 30 days for additional evidence after the hearing, an acceptable method of further developing the record.  Petitioner submitted additional documents in support of her neurological and mental impairments.[5]  The ALJ discussed these exhibits in his decision.  (*See* AR 20-22.)

---

[5] In Petitioner's brief she references treatments notes from a Dr. Meadows at Exhibit 20F page 48 confirming the diagnosis of major depressive disorder.  Exhibit 20F is only 5 pages in length (AR 727-731).  It does not contain any treatment notes from a Dr. Meadows, but rather neurosurgeon Dr. Anderson.  Exhibit 21F (AR 732-736) contains treatment notes from Dr. Weathers that contains a diagnosis of major depressive disorder.  The latter of these treatment notes, dated June 9, 2013, indicates Petitioner is doing much better, her mood and anxiety have improved, and the new antidepressant is working.  (AR 734.)  The Court notes these treatment notes were already in the record at Exhibit 17F (AR 680-686.)

**MEMORANDUM DECISION AND ORDER - 16**

The evidence is not ambiguous. There is evidence of a mental impairment (depression) and the ALJ concluded Petitioner's depression was a severe impairment. (AR 12.) However, the ALJ did not commit error in not ordering a consultative exam because he had sufficient information to support his disability determination regarding Petitioner's neurological and mental impairments.

The Commissioner has broad latitude whether to order consultative examinations. *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001). When the record is clear on a determinative issue, the ALJ is not required to consult an expert. *See Armstrong v. Comm. of Soc. Sec.*, 160 F.3d 587, 589 (9th Cir. 1998). The ALJ did not abuse his discretion in not ordering a consultative exam.

## IV. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549.

The evidence relied upon by the ALJ can reasonably and rationally support his well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation. Accordingly, the ALJ's decision as to Petitioner's alleged disability is based on proper legal standards and supported by substantial evidence. Therefore, the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal

standards.

Accordingly, the Commissioner's decision is affirmed.

## V.  ORDER

Based on the foregoing, Petitioner's Petitioner for Review (Dkt. 1) is DENIED, the decision of the Commissioner is AFFIRMED, and this action is DISMISSED in its entirety, with prejudice.

DATED:  **September 29, 2015**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 18**